***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. At the time of the alleged injuries on December 27, 2002 and August 14, 2003, or the contracting of and first disability from the alleged occupational diseases, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, defendant employed three or more employees, and the employee-employer relationship existed between the parties.
2. Defendant was a duly qualified self-insured employer under the North Carolina Workers' Compensation Act at all times material to these claims. Gallagher Bassett Services, Inc., is the servicing agent for defendant.
3. Plaintiff's average weekly wage at the time of the alleged injury or disability from the alleged occupational disease on December 27, 2002 was $749.98, yielding a compensation rate of $500.01.
4. Plaintiff's average weekly wage on August 14, 2003 was $805.84, yielding a compensation rate of $537.25.
5. Plaintiff was out of work because of the condition in his right forearm from December 28, 2002 through April 22, 2003 and from August 14, 2003 through May 2, 2004.
6. The issues for decision by the Commission in I.C. Claim No. 244140 are (a) whether plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant on December 27, 2002; (b) if not, whether the condition in plaintiff's right forearm is compensable as an occupational disease for which defendant has liability under the North Carolina Workers' Compensation Act; and (c) if the condition in plaintiff's right forearm is compensable as an injury by accident or occupational disease for which defendant has liability, the compensation for medical expenses, for temporary disability and for permanent partial disability, if any, which plaintiff is entitled to receive as a result of this condition.
7. The issues for decision by the Commission in I.C. Claim No. 361010 are (a) whether plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant on August 14, 2003; (b) if not, whether the condition in plaintiff's right arm beginning August 14, 2003, is compensable as an occupational disease for which defendant has liability under the North Carolina Workers' Compensation Act; and (c) if the condition in plaintiff's right arm beginning August 14, 2003 is compensable as an injury by accident or occupational disease for which defendant has liability, the compensation for medical expenses and for temporary disability, if any, which plaintiff is entitled to receive as a result of this condition. The issue of compensation for permanent partial disability as a result of the August 14, 2003 condition is reserved for future decision.
8. The stipulations and exhibits contained in the Pre-Hearing Agreement dated September 22, 2003 and in the Amendment to Pre-Hearing Agreement dated December 11, 2003, as well as the deposition of Dr. Andrew Koman, are incorporated into the record.
9. The parties stipulated into evidence as Stipulated Exhibit #1, the Pre-Hearing Agreement and attached notebook containing stipulated exhibits of the parties. Subsequent to the hearing before the Deputy Commissioner, the parties amended the Pre-Hearing Agreement by letter filed on December 18, 2003. After the hearing, the parties submitted additional documentation by letters dated September 30, 2003, October 17, 2003, December 18, 2003, January 8, 2004, and January 30, 2004. This documentation as listed was made a part of Stipulated Exhibit #1 and made a part of the record.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 33 years old, had a high school education and some technical training in welding and auto mechanics. Plaintiff has been employed as a dockworker at defendant's Kernersville trucking terminal since October 1998. Plaintiff also worked for defendant at this facility on an on-call basis for a few years prior to October 1998.
2. Plaintiff's job consisted of loading and unloading freight from truck trailers and sorting the freight for the proper destination. Plaintiff used a forklift to handle pallets containing freight, in addition to handling freight by hand. Plaintiff lifted and carried freight weighing from five to 100 pounds.
3. Defendant's terminal consists of two docks. One dock is for inbound freight and the other is for outbound freight. The inbound dock has 152 loading doors where trailers can back up and unload. Each loading door has a metal dock plate. The dock plate serves as a bridge between the dock and the trailer. Prior to use, the dock plate hangs resting down flat against the back of the dock. It is hinged at the top and toward the middle of the plate. Once a trailer backs up to the dock, the dockworker opens the back of a trailer and unloads freight, if necessary, to create sufficient space to insert the end of the dock plate into the trailer.
4. Plaintiff's job as a dock worker involves the use of a three foot long metal bar with a hook on the end, or dock hook, to pull up the end of the dock plate and pull it into the back of a trailer. Plaintiff places the hook into a slot in the dock plate and lifts the end of the plate and extends it into position inside the trailer. When pulling the plate up with the dock hook, plaintiff lifts approximately 50 to 75 pounds. Plaintiff pulls up the end of a dock plate two or three times a day to unload trucks.
5. Plaintiff did not experience pain in his right wrist prior to reporting to work at 10:30 p.m. on December 27, 2002. Plaintiff unloaded approximately 150 boxes from the back of a trailer to make room to put the dock plate into the trailer. While standing in the back of the trailer, plaintiff took the dock hook in his dominant right hand and placed the end of the hook in the slot at the bottom of the dock plate. Plaintiff pulled on the dock hook to pull the plate up and into the back of the trailer. The dock plate was very hard to pull up on this occasion, and plaintiff felt a pop. Plaintiff immediately felt pain shooting through his right wrist. Plaintiff grabbed the hook with his left hand and completed pulling the dock plate into the back of the trailer. Plaintiff continued to work with pain in his right wrist. After three hours, however, plaintiff's hand became so painful and swollen that he could no longer use it, so he stopped working.
6. Prior to December 27, 2002, plaintiff, who at the time was 32 years old, five foot nine inches and 228 pounds, had not experienced difficulty using the dock hook to pull up a dock plate. On December 27, 2002, however, it was very hard for plaintiff to pull up the dock plate, more so than at any time before and was so difficult that it caused one of the bones in plaintiff's wrist to fracture. Plaintiff reported his injury to the supervisors during his shift on December 27, 2002.
7. Plaintiff was referred by defendant to a Concentra Medical Center for treatment. Plaintiff was seen on December 30, 2002 and reported that pain occurred when he pulled up the dock plate on December 27, 2002. When an x-ray was read showing a fracture of a bone in plaintiff's right wrist, the Concentra Center referred plaintiff to an orthopedist at Wake Forest University Baptist Medical Center.
8. Plaintiff was seen by orthopedic services at Wake Forest University Baptist Medical Center on December 30, 2002. Plaintiff complained of constant and severe pain and swelling in the right wrist. Plaintiff reported persistent pain since December 27, 2002, when he reached down and lifted the dock plate and felt the painful pop in his right wrist. The assessment was "Rule out fracture versus ligamentous injury." A cast was placed on plaintiff's right wrist. Plaintiff was restricted from using his dominant right hand and from doing his regular job as a dockworker. Defendant did not permit plaintiff to return to work with these limitations.
9. Defendant denied plaintiff's claim for workers' compensation for the right wrist on December 31, 2003 because "no injury by accident has occurred per North Carolina jurisdiction."
10. On January 8, 2003, plaintiff returned to Wake Forest University Baptist Medical Center and was examined by Dr. Andrew Koman, an orthopedic surgeon on the Wake Forest University medical school faculty with a sub-specialty in hand surgery. Plaintiff's exam was classic for a scaphoid fracture in the right wrist. Dr. Koman recorded that the fracture occurred on December 27, 2002 in the manner described by plaintiff.
11. From January 8, 2003 through April 16, 2003, plaintiff was seen eight times by Dr. Koman and his associates in orthopedic services at Wake Forest University Baptist Medical Center for treatment of his right wrist. Plaintiff was initially placed in a cast and a customized splint to hold the wrist in a protected position. Anti-inflammatory and pain medications were prescribed, and plaintiff participated in hand therapy from March 10, 2003 through April 15, 2003. On April 16, 2003, plaintiff was released to return to work without restrictions.
12. Dr. Koman testified that the conditions responsible for plaintiff's right wrist pain beginning December 27, 2002 were a sprain with an avulsion fracture of the right scaphoid bone and a tenosynovitis of the first and second dorsal compartments. The sprain was to the ligaments attached to the broken scaphoid bone. Dr. Koman further explained that the tenosynovitis, or inflammation of a tendon, was to the adjacent tendons caused by the injury to the ligaments, avulsion fracture of the scaphoid bone, and subsequent treatment.
13. Plaintiff's physical activity was restricted due to his injury and he was unable to perform his job as a dockworker for defendant from December 27, 2002 through April 16, 2003. Defendant did not make work available to plaintiff which accommodated plaintiff's physical limitations during this time. Plaintiff's right wrist condition was asymptomatic by April 16, 2003, at which time plaintiff's December 27, 2002 injury was at maximum medical improvement. Plaintiff did not sustain any permanent partial impairment as a result of the injury.
14. Plaintiff returned to his job for defendant as a dockworker after Dr. Koman released plaintiff on April 16, 2003. Except for a several-week absence due to a foot injury occurring away from work, plaintiff performed his usual duties as a dockworker without experiencing a problem in his wrist until August 14, 2003.
15. On August 14, 2003, roughly 75 boxes weighing approximately 25 pounds each fell from a skid onto the dock floor at defendant's terminal. Plaintiff picked up the boxes and placed them back on the skid. When he was almost finished, plaintiff felt a popping sensation in his right wrist and severe pain. Plaintiff reported this incident to the manager on duty and they filled out an injury report.
16. Plaintiff was referred by defendant to Concentra Medical Centers on August 14, 2003. The physician on duty made a diagnosis of "right wrist strain." Defendant notified plaintiff that this condition would not be covered by workers' compensation and that plaintiff would have to seek treatment from his own physician after his workers' compensation claim for this occurrence was denied. Plaintiff thus sought treatment from the Prime Care Medical Center in Kernersville, where he was seen on August 19, 2003 and was referred to physical therapy. Prime Care Medical Center recommended that plaintiff return to Dr. Koman's care. Plaintiff was to remain out of work until at least August 28, 2003.
17. On August 27, 2003, plaintiff was seen by Dr. Koman for aggravation of the deQuervain's tenosynovitis in the right wrist. Dr. Koman testified that plaintiff's tenosynovitis from his December 2002 injury became inflamed again in August 2003 due to plaintiff's use of his right wrist at work. Treatment for plaintiff included a splint and anti-inflammatory and steroid medications. Dr. Koman stated that plaintiff's right wrist tenosynovitis might heal without a permanent impairment or could continue and require surgery, possibly leaving plaintiff permanently impaired. At the time of the Deputy Commissioner's hearing, plaintiff's condition was not at maximum medical improvement. In August 2003, plaintiff was instructed by Dr. Koman to remain out of work. Defendant did not permit plaintiff to return to work with his physical limitations and did not made work available that would accommodate the limitations on use of plaintiff's right hand.
18. Plaintiff recovered from the tenosynovitis in his right wrist after his first injury by April 16, 2003. That first episode of tenosynovitis, however, predisposed plaintiff and made it more likely for plaintiff to have the same condition in the future. Dr. Koman testified to a reasonable degree of medical certainty that plaintiff's second episode of tenosynovitis on August 14, 2003 was an exacerbation of a preexisting work-related condition. Plaintiff's use of the right hand in picking up and handling roughly 75 boxes that fell from the skid on August 14, 2003 caused the recurrence of plaintiff's tenosynovitis.
19. On December 27, 2002, plaintiff sustained an injury by accident to his right wrist when he fractured the scaphoid bone and sprained the ligaments attached in his wrist when he pulled hard on the dock plate. The trauma of this injury also caused a tenosynovitis of the adjacent tendons. It was harder for plaintiff to pull up on the dock plate on this occasion than on previous occasions. The additional strength or exertion required for plaintiff to lift the dock plate on this occasion was sufficient to break his right wrist. Plaintiff's work routine thus was interrupted and conditions were introduced likely to result in unexpected consequences.
20. As a result of the December 27, 2002 injury by accident, plaintiff was unable to return to his regular job and was restricted to left-handed work only from December 28, 2002 through April 16, 2003. Defendant did not offer plaintiff work suitable to his capacity during this time.
21. The recurrence of plaintiff's right wrist tenosynovitis beginning August 14, 2003 was a direct and natural consequence and within the chain of causation from plaintiff's December 27, 2002 injury by accident. Plaintiff's right wrist tenosynovitis recurred because his previous injury predisposed and made plaintiff more likely to have the recurrence.
22. At the hearing before the Full Commission, defendant's attorney was asked to provide the date plaintiff returned to work for defendant following plaintiff's August 14, 2003 recurrence of tenosynovitis. Defendant submitted documentation that plaintiff returned to work as a dock worker on May 3, 2004, earning $20.76 per hour, which was $.40 more per hour than plaintiff earned prior to August 14, 2003. Without objection from plaintiff, the documents showing plaintiff's return to work date and his rate of pay are received into evidence.
23. Defendant did not offer plaintiff work that would accommodate the limitations on the use of plaintiff's right hand. As a result of the August 14, 2003 recurrence of plaintiff's tenosynovitis, plaintiff was unable to work and earn wages in any capacity from August 15, 2003 through May 2, 2004.
24. The treatment by the physicians at Prime Care Medical Center and at Wake Forest University Baptist Medical Center for plaintiff's wrist fracture, strain, and tenosynovitis were reasonably necessary to evaluate and provide treatment and relief from these compensable conditions.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On December 27, 2002, plaintiff sustained an injury by accident to his right wrist arising out of and in the course of his employment with defendant when he fractured the scaphoid bone and sprained the attached ligaments in his wrist. N.C. Gen. Stat. § 97-2(6).
2. As a result of his injury by accident, plaintiff is entitled to compensation for temporary total disability from December 28, 2002 through April 16, 2003 and from August 15, 2003 through May 2, 2004 at the rate of $500.01 per week. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendant provide all medical compensation arising from plaintiff's injury by accident, including payment for the services of the physicians at the PrimeCare Medical Center and Wake Forest University Baptist Medical Center. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff compensation for temporary total disability from December 28, 2002 through April 16, 2003 and from August 15, 2003 through May 2, 2004 at the rate of $500.01 per week. The amount that has accrued shall be paid in a lump sum, subject to the attorney's fee approved in paragraph 2 of this Award.
2. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff's attorney and twenty-five percent of the accrued amount due plaintiff shall be deducted and paid directly to plaintiff's attorneys.
3. Defendant shall pay all medical expenses incurred by plaintiff as a result of his injury by accident when bills for the same have been submitted to and approved by the Industrial Commission, for so long as it tends to effect a cure, give relief, or lessen plaintiff's disability. These medical expenses shall include payment for the services of the physicians at the PrimeCare Medical Center and Wake Forest University Baptist Medical Center.
4. Defendant shall pay the costs.
This the 25th day of May 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER